UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JIM R. HARRIS, JR.                                                                             PETITIONER

V.                                                           CIVIL ACTION NO. 3:25-CV-15-DPJ-ASH

WARDEN KEYES                                                                               RESPONDENT

REPORT AND RECOMMENDATION

Petitioner Jim R. Harris, Jr., a federal inmate, filed this petition under 28 U.S.C. § 2241 challenging the Bureau of Prisons' calculation of his sentence. As explained below, the undersigned recommends the Court deny Harris's petition.

I.      Facts and Procedural History

On February 17, 2010, the Scott County, Missouri, Sheriff's Department arrested Harris on state charges for assault, robbery, and armed criminal action. On April 15, 2010, the federal grand jury for the Eastern District of Missouri handed down an indictment charging Harris with interference with commerce by threat or violence, possession of a firearm in furtherance of a crime of violence, and being a felon in possession of ammunition. On April 19, 2010, Harris was temporarily transferred from state to federal custody pursuant to a writ of habeas corpus ad prosequendum. Harris pleaded guilty to the three federal charges and, on May 29, 2012, was sentenced to a 300-month term of incarceration. The federal judgment was silent as to whether the sentence should run consecutively to or concurrently with any forthcoming state sentence. Following his federal sentencing, Harris was returned to Missouri state custody on June 1, 2012.

On July 12, 2012, the state court sentenced Harris to a 15-year term of incarceration on the state assault charge. The state court ordered the sentence to run concurrent with Harris's federal sentence. On July 28, 2017, Harris was again temporarily transferred from state to federal

custody pursuant to a writ of habeas corpus ad prosequendum, this time for resentencing. On September 5, 2017, the federal court in Missouri resentenced Harris to a 183-month term of incarceration. This time, the judgment specified that the sentence should run consecutive to all other sentences including the state sentence Harris was then serving. Harris was returned to state custody on September 5, 2017.

On February 15, 2023, the State of Missouri paroled Harris and transferred him to federal custody to serve his federal sentence. Believing he should receive credit towards his federal sentence for the time he was serving his state sentence, Harris filed this habeas petition on January 10, 2025. *See* Pet. [1] at 7 (asking the Court to "grant credit for time served" and "release with no probation").[1] Respondent answered [13] the petition, and Harris responded [15] to the answer.[2]

II.     Analysis

"The BOP is responsible for calculating sentencing credit, and the proper vehicle for raising . . . a challenge [to that calculation] is a petition pursuant to 28 U.S.C. § 2241." *United States v. Sonsteng*, No. 2:17-539, 2021 WL 2380054, at *1 (S.D. Tex. June 9, 2021) (citing *Pack*

---

[1] It's clear that Harris's petition challenges the calculation of his sentence, a claim properly brought under § 2241. But the specific grounds he raises address discrete alleged violations of his constitutional rights that this Court cannot address in this § 2241 petition. *E.g.*, Pet. [1] at 6 (asserting kidnapping claim based on allegation that "U.S. Marshal removed Petitioner from the Scott County Missouri Jail . . . without the Judge or Prosecutor releasing the custody of Petitioner over to them"); *id.* (stating that "state court judge relinquished primary jurisdiction"); *id.* (asserting that state plea agreement was violated); *id.* at 7 (arguing that "Resentencing after Remand was required to run concurrently"); *see Brennan v. Pearson*, 349 F. App'x 887, 888 (5th Cir. 2009) (explaining that "[r]elief . . . for errors . . . that occurred at or prior to sentencing" may be obtained in a § 2255 petition "filed in the sentencing court" (cleaned up)). The undersigned thus recommends that these grounds be dismissed without prejudice for lack of jurisdiction.

[2] Harris also filed a motion to expedite [9]. The Court has separately ruled on that motion.

*v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000)). Before filing a § 2241 petition, "[a] federal prisoner seeking credit on his sentence . . . 'must first exhaust his administrative remedies through the'" BOP. *Castano v. Everhart*, 235 F. App'x 206, 207 (5th Cir. 2007) (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990)).

The BOP's regulations provide for a multiple-step Administrative Remedy Program that "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10; *see generally id.* §§ 542.10–542.19 (Subpart B, Administrative Remedy Program).[3] To begin the process, "an inmate shall first present an issue of concern informally to staff." *Id.* § 542.13. If informal resolution does not address the inmate's concerns, within "20 calendar days following the date on which the basis for the Request occurred," the inmate files "a formal written Administrative Remedy Request, on the appropriate form (BP-9)." *Id.* § 542.14(a). The regulations state that "a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." *Id.* § 542.18. Once a BP-9 is filed, "response shall be made by the Warden . . . within 20 calendar days." *Id.* Next, "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). The Regional Director then has 30 calendar days to respond, *id.* § 542.18, and "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General

---

[3] The BOP has adopted a Program Statement explaining the agency's interpretation of its regulations and procedure for administering the Administrative Remedy Program. Prog. Stmt. 1330.18, Administrative Remedy Program (Jan. 6, 2014), *available at* https://www.bop.gov/policy/progstat/1330_018.pdf [https://perma.cc/FM8C-529A]; *see also Gayton v. Rivers*, No. 3:23-CV-1842-X, 2023 WL 8007387, at *2 (N.D. Tex. Aug. 24, 2023), *report and recommendation adopted,* 2023 WL 8005316 (N.D. Tex. Nov. 17, 2023).

Counsel within 30 calendar days of the date the Regional Director signed the response," *id.* § 542.15(a). The General Counsel has 40 calendar days to respond to the BP-11. *Id.* § 542.18.

If, at any point during the process, "the inmate does not receive a response within the time allotted for reply . . . , the inmate may consider the absence of a response to be a denial at that level." *Id.* § 542.18; *see Flores v. Lappin*, 580 F. App'x 248, 250 (5th Cir. 2014) ("[E]ven if a response to [the inmate]'s administrative remedy request was delayed, the regulations of the Bureau of Prisons provide authority for inmates who do not receive timely responses to administrative remedy submissions to pursue their appeals."). "The filing of an appeal to the General Counsel 'is the final administrative appeal.' 28 C.F.R. § 542.15(a). Upon completing this multi-tiered review process, a federal inmate h[a]s exhausted h[is] administrative remedies for filing a § 2241 petition." *Gayton*, 2023 WL 8007387, at *2 (citing *Gross v. Cruz*, No. 3:09-CV-928-B, 2007 WL 1675075, at *1 (N.D. Tex. June 15, 2009)).

Respondent says Harris has not exhausted his jail-credits claim, but the attachments to Harris's petition tell a slightly different story. Harris describes his efforts to exhaust as follows:

> 8/19/24, I filed a[] BP-9 to Warden, Case Number 1209884-F1. 8/26/24, AW Powell responded, however, I was not given the response until 9/11/24. 9/13/24, I filed a BP-10 Remedy Appeal, See Tracking No. 7021 0350 0000 5233 2382.
>
> As of 10/17/24, After the 30 calendar days had expired with no response, I filed the BP-11 on 10/23/24.
>
> As of this 6th day of January, 2025, I have not received a response from the BP-11, which is way beyond the 40 calendar days. 28 C.F.R. § 542.18, Nor have I received a written request from staff requesting an extension of time, which is now considered a denial.

Pet. Attach. 1 [1-1] at 1; *see id.* Attach. 7 [1-7] at 13 (Aug. 19, 2024 BP-9); *id.* at 14 (Aug. 26, 2024 Resp. showing delivered to Harris on Sept. 11, 2025); *id.* at 15 (Sept. 13, 2024 BP-10); *id.*

4

at 16 (BP-11 dated Oct. 17, 2024, with a notation at the top including the date 10/23/24 and some apparent initials).

The Declaration of BOP Supervisory Attorney Michael FiggsGanter indicates that the BOP received the BP-9 and BP-10 assigned remedy number 1209884, but that Harris "filed no further remedies bearing this identification number" and his BP-11 "was never submitted, reviewed and appropriately closed by the Office of General Counsel as required." FiggsGanter Decl. [13-3] ¶ 18. FiggsGanter's claim that Harris failed to appeal remedy number 1209884 to the General Counsel is contradicted by the attachment he references. *See* Admin. Remedy Generalized Retrieval [13-3] at 20 (CM/ECF pagination) (documenting the BOP received remedy number 1209884-A); FiggsGanter Decl. [13-3] ¶ 6 ("Th[e] final level of review in the administrative appeal process is denoted by the letter "A" following the administrative remedy identification number.").

The Court doesn't know what to make of this discrepancy. Respondent's brief offers no assistance. It is conclusory and simply points to FiggsGanter's declaration. Resp. [13] at 5. While Harris's attachment describing the sequence of events is not sworn under penalty of perjury, he submitted a copy of the BP-11 he says he sent to the Office of General Counsel that bears two dates—the date he signed it, October 17, 2024, and October 23, 2024, presumably the date someone received the filing. Because it is not clear whether Harris fully exhausted, the Court will move to Respondent's argument that Harris's petition is due to be denied on the merits. *See Nichols v. Joslin*, No. 3:04-CV-59, 2005 WL 1017833, at *4 (N.D. Tex. Mar. 25, 2005) ("Because exhaustion is not a jurisdictional prerequisite to bringing a § 2241 petition, the Court may address the merits of such a petition notwithstanding a lack of exhaustion."), *report and recommendation adopted*, 2005 WL 1017844 (N.D. Tex. Apr. 28, 2005).

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence," including "determining the amount of a defendant's jail-time credit." *United States v. Wilson*, 503 U.S. 329, 335 (1992). Whether the BOP has properly calculated a prisoner's sentence "raises two issues: (1) when his federal sentence commenced, and (2) whether he is entitled to credit for any time in custody before the date his sentence commenced." *Curry v. Wingfield*, No. 3:24-CV-141-DPJ-ASH, 2025 WL 2076472, at *5 (S.D. Miss. July 11, 2025), *report and recommendation adopted*, 2025 WL 2076473 (S.D. Miss. July 23, 2025).

A sentence's commencement date is set by statute: "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). BOP Program Statement 5880.28 explains that under the statute,

> [i]f the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

Craver Decl. [13-2] Attach. 13 (BOP Program Statement 5880.28, at Part 3.b. (Page 1 – 12)). In this case, Harris was not in exclusive federal custody at the time his federal sentence was imposed but was instead in federal custody pursuant to a writ of habeas corpus ad prosequendum. *See Washington v. Chandler*, 533 F. App'x 460, 461 (5th Cir. 2013) ("When [the petitioner] was transferred to the Northern District of Texas pursuant to writs of habeas corpus ad prosequendum, each transfer was 'only a "loan" of the prisoner' such that Texas retained primary jurisdiction." (quoting *Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir. 1980))). So the

commencement date was the date he was finally turned over to exclusive federal custody to begin service of his federal sentence—February 15, 2023.

The next question is whether Harris is missing any credits for prior custody to which he is entitled. Title 18 U.S.C. § 3585(b) explains that a prisoner

> shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Applying this statute, the BOP awarded Harris credit for 774 days in custody: February 17, 2010, and April 20, 2010, through May 31, 2012. FiggsGanter Decl. [13-3] Attach. A at 3–4. And the State of Missouri gave Harris credit toward his state sentence for the periods from February 18, 2010, through April 19, 2010, and June 1, 2012, through July 13, 2012—the date he was delivered to the state Department of Corrections. Craver Decl. [13-2] Attach. 2; *id.* Attach. 19 at 4. Harris was then serving his state sentence from July 13, 2012, through February 15, 2023, when he was paroled into federal custody to begin service of his federal sentence. Harris has not shown that any of the time he was in custody before his federal sentence commenced (and for which his federal sentence has not been credited) has not already "been credited against another sentence." 18 U.S.C. § 3585(b). Instead, it is clear that all such time was credited toward his state sentence. The BOP has correctly calculated Harris's sentence.

Harris makes a couple of additional arguments the Court will address. First, he says that his state and federal sentences should have run concurrently to one another. Under 18 U.S.C.

§ 3584(a), "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *See Free v. Miles*, 333 F.3d 550, 553 (5th Cir. 2003) ("Well-settled federal law presumes that when multiple terms of imprisonment are imposed at different times, they will run consecutively *unless* the district court specifically orders that they run concurrently."). A federal court "may consider subsequent sentences anticipated, but not yet imposed, in separate state court proceedings" when deciding whether to impose a concurrent or consecutive sentence. *United States v. Brown*, 920 F.2d 1212, 1217 (5th Cir. 1991), *overruled on other grounds by United States v. Candia*, 454 F.3d 468, 472–73 (5th Cir. 2006). But Harris's initial federal judgment was silent as to how his sentence should run relative to the anticipated state sentence, and the judgment upon resentencing specified that the federal sentence would run consecutively to all other sentences. Harris's federal sentence was properly run consecutively to his state sentence.

Finally, Harris complains that the BOP declined to grant him a nunc pro tunc designation. *See Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010) ("Where a federal sentence was imposed before a state sentence, the BOP may indirectly award credit for time served in state prison by designating nunc pro tunc the state prison as the place in which the prisoner serves a portion of his federal sentence."). But where nothing in the record shows the federal court intended for its sentence "to run concurrently" with a state sentence, "the BOP [is] well within its discretion to deny [a] request for a nunc pro tunc designation." *Rodriguez v. Pitzer*, 76 F. App'x 519, 520 (5th Cir. 2003). As already noted, nothing suggests the district court intended the federal sentence to run concurrent with the state sentence. Instead, when Harris was resentenced, it ordered the federal sentence to run consecutive to the state sentence. *See* Craver Decl. [13-2] Attach. 12

8

(rejecting nunc pro tunc designation on this basis). The BOP's refusal to award Harris a nunc pro tunc designation does not entitle him to habeas relief.

III.    Conclusion and Recommendation

The Court has considered all arguments. Any not directly addressed would not have changed the outcome. For the reasons stated, the undersigned recommends the Court deny Harris's petition, dismiss without prejudice for want of jurisdiction the specific grounds set forth in Harris's petition, and dismiss with prejudice Harris's claim regarding the way the BOP has calculated his sentencing credits.

IV.    Notice of Right to Object

In accordance with Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy[4] of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v.*

---

[4] When a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).

*Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

    Respectfully submitted, this the 12th day of November, 2025.

                                              s/ *Andrew S. Harris*
                                              UNITED STATES MAGISTRATE JUDGE